**FILED**

**NOV 25 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

S.S., a minor,                                       )
By her parent and next friend,                       )
Latisha Martin,                                      )
1388 First St. SW                                    )
Washington, D.C. 20024                               )
                                                     )
and                                                  )
                                                     )
Latisha Martin,                                      )
1388 First St. SW                                    )
Washington, D.C. 20024                               )
                                                     )
    Plaintiffs,                  )   Case: 1:14-cv-02039
                                                     )   Assigned To : Leon, Richard J.
    v.                            )   Assign. Date : 11/25/2014
                                                     )   Description: Pro Se Gen. Civil
DISTRICT OF COLUMBIA                                 )
A Municipal Corporation                              )
One Judiciary Square                                 )
441 4th St., N.W., 6th Floor                         )
Washington, D.C. 20001                               )
                                                     )
    Defendant.                    )
                                                     )

## COMPLAINT

### I.   INTRODUCTION

1. This is an action by Latisha Martin, in her own right and on behalf of her daughter, S.S.,

   under the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.

   § 1400 *et seq.* ("IDEIA"). The Plaintiffs seek relief from an administrative Hearing

   Officer's Determination ("HOD") (*see* Attachment 1), issued on August 25, 2014, that

   determined S.S. was not denied a free and appropriate public education ("FAPE"),

   despite the unrefuted evidence presented at the hearing showing that S.S. did not make

   meaningful educational progress for at least two school years.



RECEIVED

NOV 20 2014

Clerk, U.S. District and
Bankruptcy Courts

1

## II.     JURISDICTION

2.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343; the
    Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415 et seq.; the
    Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), P.L. 108-
    446; and 42 U.S.C. § 1983.  This Court has pendent jurisdiction pursuant to D.C. Mun.
    Reg. tit. 5, § E-3000 *et seq*.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and
    2202.

3.  The Plaintiffs have exhausted their administrative remedies and now appeal to this Court
    for relief from a final order contained in the HOD (*see* Attachment 1), determining S.S.
    was not denied a FAPE as a student receiving special education services in the District of
    Columbia Public Schools ("DCPS").

## III.    PARTIES

4.  Plaintiff, S.S., is a disabled child, as defined by the IDEA, eligible to receive special
    education and related services.  S.S. is a resident of the District of Columbia.

5.  Plaintiffs allege that S.S. is a child who failed to make meaningful educational progress
    for at least two school years, and who requires a full-time special education placement for
    students with learning disabilities at Kingsbury Day School and compensatory education
    in order to make educational progress.  S.S. resides with her mother and siblings in the
    District of Columbia.

6.  Plaintiff, Latisha Martin, is the biological mother of minor child, S.S.  Ms. Martin is
    bringing this action on S.S.'s behalf, and in her own right.  Ms. Martin is a resident of the
    District of Columbia.

7. Defendant, District of Columbia, is a municipal corporation.  As one of its governmental functions, the Defendant operates DCPS.  At all times relevant to this complaint, the District of Columbia was the State Educational Agency ("SEA") and DCPS was the Local Education Agency ("LEA") for S.S.  As the LEA for S.S., DCPS was responsible for providing special education and related services to S.S. to ensure that she received a free and appropriate public education.

## IV.   FACTS

8. S.S. was born on January 10, 2004 and is currently ten years old.

9. S.S. attended DCPS schools starting in pre-kindergarten in the 2008-2009 school year.

10. S.S. has always struggled to academically perform at or close to grade level in school.  In 2011, when S.S. was in first grade, her teacher wrote on S.S.'s report card: "[S.S.] is struggling in reading.  She continues to have difficulty with letter-sound.  We work on this every day. She does not recognize many sight words."

11. S.S. was finally referred for further evaluations when she was in second grade.  DCPS speech language pathologist Anna Allen completed a speech language reevaluation on January 3, 2012, and DCPS school psychologist Brenda Nishimura completed a psychological evaluation on January 30, 2012.  At the time that these evaluations were completed, Ms. Martin reported to Ms. Nishimura that S.S. "struggles to complete grade level classwork and homework assignments, especially in the area of Reading."

12. The January 30, 2012 psychological evaluation found that S.S. has average cognitive abilities, achieving a Full-Scale IQ of 91 on the Weschler Intelligence Scale for Children – Fourth Edition ("WISC-IV").  Academically, S.S.'s performance on the Woodcock-

Johnson Tests of Achievement – Third Edition ("WJ-III") on the January 30, 2012 evaluation showed that she was significantly below grade level. Her scores in all academic subjects ranged from kindergarten to early first grade. These scores matched S.S.'s DIBELS Text, Reading, and Comprehension ("TRC") score of Level B, indicating an early Kindergarten reading level. The psychological evaluation reported the following regarding S.S.'s academic abilities as of January 2012: "A review of [S.S.'s] beginning of the year Literary Progress report indicates that she is reading at the 'B' level, well below grade level. At the beginning of the year, 2nd graders are expected to enter 2nd grade on level 'I.' [S.S.] also demonstrates weaknesses in Oral Reading Fluency, as measured by the Dynamic Basic Indicators of Early Literacy measure (DIBELS). In September 2011, [S.S.] was able to read 3 words per minute, compared to the grade level benchmark of 44 words per minute. At the end of November 2011, [S.S.'s] word per minute rate had increased to 6 words per minute, still well below the grade level benchmark."

13. On January 31, 2012, DCPS identified S.S. as a student with a specific learning disability who was eligible for special education services. S.S.'s specific learning disability affected her in mathematics, written expression, reading, and speech and language.

14. DCPS was on notice that S.S. was failing to make academic progress. At the end of the 2011-2012 school year, S.S.'s second grade teacher, Ms. Amanda Oberski, wrote in her report card: "[S.S.] is not ready for 3rd grade. She grew this year, but she is still on a 1st grade reading level. Instead of pushing her into 3rd grade, she would be better in second grade again."

15. S.S. was nevertheless promoted to the third grade for the 2012-2013 school year.

16. On November 28, 2012, DCPS developed an Individualized Education Program ("IEP") for S.S. that included five hours per week of specialized instruction outside of general education, two and a half hours per week of specialized instruction in general education, and four hours per month of speech language services.

17. Over the course of the 2012-2013 school year, when S.S. was in third grade, S.S.'s reading level remained at a kindergarten or first grade level. In September of 2012, S.S.'s reading level was a DIBELS TRC Level B, which indicates that she was reading at the level of a kindergarten student. This shows no progress from her score of TRC Level B in September 2011. By the end of third grade, S.S.'s reading level was a TRC Level E, the lowest first grade reading level.

18. Upon beginning fourth grade at Amidon-Bowen Elementary School in September 2013, S.S. began having behavioral difficulties. S.S. was suspended for three days from October 7-9, 2013 for getting into a fight with another student.

19. At an IEP meeting on November 14, 2013, Ms. Martin voiced her concerns, through counsel, that S.S. was still not making academic progress and that S.S. was being bullied in school. DCPS increased the hours on S.S.'s IEP to ten hours of specialized instruction outside of general education and five hours of specialized instruction inside general education. S.S. continued to receive four hours per month of speech and language services. At this meeting, S.S. qualified for extended school year services ("ESY") in order to receive a FAPE due to her regression over previous summer vacations.

20. At an IEP meeting on December 5, 2014, Ms. Martin requested a functional behavioral assessment ("FBA") as a result of her concerns about S.S.'s behavior. Ms. Martin raised additional concerns about S.S.'s behavior and academic progress. DCPS agreed to

5

complete academic achievement testing, a behavior screening, and a speech and language re-evaluation.

21. An evaluation completed by DCPS on December 19, 2013, reported that S.S.'s most recent TRC level was C, after regressing from level E at the end of the 2012-2013 school year. The evaluation also noted that S.S.'s DIBELS word fluency score was thirty-three words per minute, well below the fourth grade standard of 103 words per minute at the middle of the year mark.

22. An IEP meeting was held on January 30, 2014, to discuss S.S.'s reevaluations. DCPS completed a Woodcock-Johnson III Normative Update Tests of Achievement on January 8, 2014. The results show that S.S. academically remained far below grade level, performing on a first grade and second grade level in reading, written expression, and writing, despite her age and placement as a fourth-grade student.

23. The January 28, 2014 behavior screening showed that S.S. was exhibiting multiple behavior problems in the school setting as a result of her low academic achievement.

24. The January 30, 2014 speech and language re-evaluation showed that S.S. continued to be a student requiring speech language services on her IEP.

25. DCPS developed a behavior intervention plan ("BIP") for S.S. on February 10, 2014, to address her increasing behavior issues at Amidon-Bowen Elementary School. This plan stated that: "weekly assessment of behavior is communicated to parent and administrators. Maintain behavior sheets."

26. A third IEP meeting was held during the 2013-2014 school year on February 12, 2014. At that time, S.S.'s mother, Ms. Martin, again stated, through counsel, that S.S. was failing to make educational progress in school and required a full-time special education

placement for students with learning disabilities in order to receive a FAPE. DCPS refused to increase S.S.'s hours on her IEP to a full-time special education placement, and instead changed S.S.'s hours to twenty-two and a half hours per week of specialized instruction outside of general education. S.S. received four hours per month of speech language services and two hours per month of behavioral support services. DCPS agreed to order an FBA by February 20, 2014, to evaluate S.S.'s increasing behavioral difficulties in the school setting.

27. Throughout the spring of 2014, S.S. continued to exhibit behavioral difficulties as a result of her failure to make academic progress. For example, S.S. was suspended for one day on March 13, 2014, for getting into a fight with another student. S.S. later was suspended for nine days from April 1-11, 2014, for fighting with other students. S.S. continued to have problems with peers, including being bullied. Additionally, S.S. was sent home without DCPS processing suspension paperwork on multiple occasions. Ms. Martin brought her concerns to DCPS's attention, but these issues remained unaddressed in any meaningful way. Although S.S.'s BIP required weekly behavior reports, Ms. Martin never received any updates regarding her behavior despite making repeated requests for additional information to the school when S.S. was bullied during the spring of 2014.

28. Due to Ms. Martin's increasing concern about S.S.'s escalating behavioral problems and her continued failure to make educational progress, the family requested that Richard Weinfeld, an educational expert with over thirty years of experience as a special education teacher and administrator, conduct an independent evaluation of educational need to determine what type of specialized instruction, accommodations, and educational placement S.S. would need in order to make progress. This evaluation is analogous to

DCPS's evaluation referred to as "Analysis of Existing Data" that contains classroom observations, a review of documents, and recommendations.

29. On April 24, 2014, Mr. Weinfeld emailed S.S.'s special education teacher, Bernard Jankowski, requesting to schedule "an evaluation of [S.S.'s] strengths, challenges and needs." Mr. Jankowski never responded to this email. (*See* Attachment 2, Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services, at Exhibit 1.)

30. On May 5, 2014, Plaintiffs' counsel emailed Mr. Jankowski requesting that he assist Mr. Weinfeld in finding a date and time to observe S.S. at school. On May 10, 2014, Mr. Jankowski replied via email to counsel. He attached the DCPS's *Chancellor's Directive: School Visitors, School Records Release, and Barring Notice Procedures*[1] and wrote, "Please read the attached and have appropriate documents [sic] for observation and we can schedule a visit." (*See* Attachment 2, Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services, at Exhibit 2.)

31. On May 21, 2014, Mr. Weinfeld responded to Mr. Jankowski. Mr. Weinfeld again requested to schedule an observation of S.S. and proposed possible dates before the end of the school year. On May 23, 2014, Kano Hudson, SEC and LEA representative for Amidon-Bowen Elementary School, responded to Mr. Weinfeld and refused to permit an observation. (*See* Attachment 2, Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services, at Exhibit 3.)

32. On May 30, 2014, Plaintiffs' counsel wrote to Mr. Hudson requesting that he accommodate the request for an observation of S.S. as part of an independent evaluation of educational need. Attached to the email was a release of information signed by Ms.

---

[1] Although Plaintiffs do not agree with the legality of portions of the *Chancellor's Directive*, under DCPS's own policy, this type of observation should be permitted.

8

Martin granting Mr. Weinfeld permission to conduct an observation of S.S., speak with school staff, have access to S.S.'s records, and conduct an evaluation of educational need. The same day, Mr. Hudson responded via email that "no observations will be allowed on any children at Amidon-Bowen." (*See* Attachment 2, Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services, at Exhibit 4.)

33. The IEP team referred S.S. to DCPS's Least Restrictive Environment ("LRE") Team in April 2014.  While denying Plaintiffs the opportunity to conduct a classroom observation, DCPS completed its own classroom observation of S.S. on May 16, 2014, as part of the LRE Referral process.

34. Ms. Martin filed a Due Process Complaint (*see* Attachment 3) on June 11, 2014.  The Due Process Complaint made the following allegations: (1) that DCPS had failed to provide S.S. with FAPE because S.S. had not made meaningful educational progress in over two school years at her current placement, Amidon-Bowen Elementary School.  As a student with average cognitive abilities, S.S. is capable of making academic progress with appropriate specialized instruction and accommodations, which she failed to receive at Amidon-Bowen Elementary School; (2) DCPS denied S.S. a FAPE by failing to comprehensively re-evaluate her by not completing and reviewing the FBA with the IEP team; (3) DCPS failed to provide S.S. with a FAPE because her February 12, 2014 IEP was inappropriate; (4) DCPS failed to provide S.S. with a placement that could appropriately implement her inadequate February 12, 2014 IEP; (5) S.S.'s 2013-2014 educational placement was inappropriate and no appropriate placement had been proposed for the 2014-2015 school year; (6) S.S.'s November 14, 2013 IEP and S.S.'s November 28, 2012 IEP were inappropriate; (7) DCPS failed to provide Ms. Martin with

9

educational records; and (8) DCPS refused to permit an independent evaluator to conduct a classroom observation of S.S. as part of an Independent Educational Evaluation.

35. On June 20, 2014, DCPS filed a response to Plaintiffs' Due Process Complaint.

36. DCPS convened a Resolution Session Meeting on June 26, 2014. DCPS presented Ms. Martin with a letter stating that S.S.'s educational placement would be changed for the 2014-2015 school year to the Behavioral and Emotional Support ("BES") classroom at Malcolm X Elementary School @ Green. This was the only DCPS placement ever proposed prior to the hearing. Ms. Martin agreed to tour the proposed educational placement. Additionally, S.S.'s IEP was amended to provide her with transportation services.

37. During the Resolution Session Meeting, DCPS Case Compliance Officer, Tiffany Ingram, invited counsel to present additional information about Mr. Weinfeld's evaluation of S.S. in order for the classroom observation to be completed during the 2014 ESY period. Ms. Ingram stated that she would send counsel an email detailing the information that DCPS needed. Having received no email from Ms. Ingram, Plaintiffs' counsel emailed Ms. Ingram on July 2, 2014, offering additional information about the necessity of a classroom observation of S.S. and the specific actions that Mr. Weinfeld planned to take in order to complete his independent evaluation of educational need. The same day, Maya Washington, counsel for DCPS, responded via email and refused to permit a classroom observation of S.S. (*See* Attachment 2, Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services, at Exhibit 6.)

38. On July 11, 2014, Plaintiffs filed Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services.  (*See* Attachment 2, Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services.)

39. On July 21, 2014, counsel for DCPS filed an opposition to Petitioners' Motion to Observe S.S. During Extended School Year (ESY) Services.  (*See* Attachment 4, DCPS Opposition to Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services.)

40. The Hearing Officer did not issue a ruling on Petitioner's Motion to Observe [S.S.] During Extended School Year (ESY) Services at any time prior to the Hearing Officer Decision.

41. The parties convened a pre-hearing conference on August 6, 2014.  The Hearing Officer determined seven issues to be adjudicated at the hearing, which were listed in the HOD: (1) Did DCPS fail to provide S.S. a FAPE because she did not make meaningful educational progress; (2) Did DCPS deny S.S. a FAPE by failing to comprehensively re-evaluate her; (3) Did DCPS deny S.S. a FAPE because her February 12, 2014 IEP was inappropriate; (4) Did DCPS deny S.S. a FAPE by failing to provide her with a placement that could appropriately implement her inadequate February 12, 2014 IEP; (5) Did DCPS deny S.S. a FAPE because her 2013-2014 educational placement was inappropriate and no appropriate placement was proposed for the 2014-2015 school year; (6) Did DCPS deny S.S. a FAPE because the November 14, 2013 and November 28, 2012 IEPs were inappropriate; and (7) Did DCPS deny S.S. a FAPE by refusing to permit an independent educational evaluator to observe S.S. as part of an Independent Educational Evaluation.

42. An initial prehearing order was issued on August 8, 2014.  The Hearing Officer did not issue a revised prehearing order until August 13, 2014, the first day of the hearing.  (*See* Attachment 5, Revised Prehearing Order.)

43. A due process hearing was convened on August 13, 2014 and August 18, 2014.

44. At the due process hearing, Plaintiffs offered forty-eight exhibits into evidence, forty-four of which were admitted into evidence.

45. Plaintiffs presented testimony from five witnesses, one of whom was qualified as an expert.  Specifically, the Plaintiffs called the following individuals as witnesses: (1) Priscilla Asiedu (S.S.'s community support worker from First Home Care, who observed S.S. both at Amidon-Bowen Elementary School and at her ESY placement); (2) Ms. Martin; (3) Raquel Farah-Robison (an investigator from Children's Law Center); (4) Marlene Gustafson, a representative from Kingsbury Day School; and (5) Richard Weinfeld, qualified as an expert in development of IEPs and programming and placements for children with emotional disturbance and learning disabilities.

46. DCPS presented six documents and testimony from four witnesses.  DCPS called the following individuals as witnesses: (1) Nicole Garcia (program manager for the behavior education support team in the Office of Specialized Instruction for DCPS); (2) Bernard Jankowski (S.S.'s special education teacher at Amidon-Bowen Elementary School); (3) Tiffany Davis (school social worker at Amidon-Bowen Elementary School); and (4) Brenda Nishimura (school psychologist at Amidon-Bowen Elementary School).

47. At the Due Process Hearing, Plaintiffs presented unrefuted documentary and testimonial evidence showing that S.S. has average cognitive abilities and, with the appropriate

specialized instruction, accommodations, and educational placement, she is capable of progressing at least one grade level per school year.

48. Mr. Weinfeld also opined that S.S. needed a full-time separate school for children with learning disabilities given that she was then multiple years below grade level, and that would impact her functioning in all classes.  In addition, given the significant bullying and S.S.'s behavioral issues, which stemmed from her embarrassment over her disability, S.S. would not benefit from exposure to her general education peers at that time.

49. Mr. Weinfeld opined that S.S.'s IEPs had been inappropriate at least since November 28, 2012, and that she had not made meaningful progress during that period.  He recommended extensive compensatory education because of that denial of a FAPE.

50. Mr. Weinfeld further testified that although he had information from an out-of-school observation of S.S. and from a review of her records, an observation of S.S. in her educational environment would have been extremely beneficial to informing his opinion.  In addition, interviews with S.S.'s teachers would also have been beneficial.  Mr. Weinfeld testified that he made requests for both of these items, but DCPS did not respond to him.

51. The Plaintiffs also put forth evidence that between September 2011 and June 2014, S.S.'s DIBELS TRC level only improved from a Level B (mid-kindergarten) to a Level G (mid-first grade).  Documentary evidence, including comments by S.S.'s classroom teachers each year, showed that S.S. had stagnated at a first grade reading level for at least the past two school years.

52. DCPS offered S.S.'s IEP progress reports into evidence. These reports indicated that S.S. was progressing on her goals, and that over the statutory period, she had only mastered a single goal.[2]

53. Mr. Jankowski, S.S.'s special education teacher for the 2012-2013 and 2013-2014 school years, testified that the progress he reported in S.S.'s IEP progress reports was "limited progress."

54. DCPS's school psychologist Ms. Brenda Nishimura testified that S.S.'s behavioral issues stemmed from the fact that "it's very hard for her to read and that she's sort of at this age where she really wants to be able to read better and she knows that she can't read what everybody else can read." Ms. Nishimura did not disagree with Plaintiffs' evidence that S.S. could make significant progress with the appropriate supports to address her learning disabilities.

55. At the due process hearing, DCPS witness Nicole Garcia testified about the proposed BES classroom at Malcolm X Elementary School @ Green.

56. The Hearing Officer subsequently permitted DCPS to introduce evidence of a new proposed placement, a learning disability classroom at Amidon-Bowen Elementary School, in spite of Plaintiffs' strenuous objection. This placement had not been disclosed nor had it been mentioned to the Plaintiffs prior to the hearing date.

57. The Hearing Officer issued a written decision on August 25, 2014. The decision noted that it is a final and appealable order.

58. The HOD found that the Plaintiffs did not meet their burden of proof on the issue of whether S.S. failed to make meaningful educational progress, and DCPS did not deny S.S. a FAPE as a result of lack of meaningful educational progress.

---

[2] This goal was an articulation goal related to speech language.

59. The HOD found that during the IEP meeting on or about February 12, 2014, S.S. was
progressing in mathematics, reading, written expression, and speech and language. The
HOD found that S.S.'s IEP progress reports and annual goals stated that S.S. was
progressing and had mastered a single goal.

60. The HOD found that Plaintiffs did not meet their burden of proof on the issue of
reevaluation. The HOD also made a finding of fact that DCPS completed S.S.'s FBA on
April 14, 2014.

61. The HOD concluded that the February 12, 2014 IEP met the *Rowley* "basic floor of
opportunity" standard because S.S. progressed on her IEP goals, according to S.S.'s IEP
progress reports.

62. Regarding placement, the HOD concluded that S.S.'s placement at Amidon-Bowen
Elementary School was appropriate for the 2013-2014 school year. The HOD further
concluded that Kingsbury Day School is not S.S.'s LRE, and DCPS proposed two
appropriate placements for the 2014-2015 school year: (1) the BES classroom at Malcolm
X Elementary School @ Green; or (2) a supposed learning disabled placement at
Amidon-Bowen Elementary School taught by Mr. Jankowski.

63. The HOD further found that Plaintiffs did not meet their burden of proof to show that
DCPS denied S.S. a FAPE by refusing to permit an independent evaluator to observe S.S.
in the academic setting. The HOD found that Mr. Weinfeld was not a "qualified
evaluator" but did not specify who a qualified evaluator might be. (*See* Attachment 1,
HOD, at 22.)

64. The Hearing Officer denied all relief requested by Plaintiffs.

65. The HOD contains palpable errors of fact and law, especially with regard to the conclusion that Plaintiffs did not meet their burden of proof in arguing that S.S. failed to make meaningful educational progress for at least two school years.

66. The Plaintiffs are aggrieved by the HOD's findings that S.S. made meaningful educational progress, that S.S.'s least restrictive environment is not Kingsbury Day School, and that S.S. does not require compensatory education in order to receive a FAPE.

67. As a result of the HOD, which offered no appropriate educational placement for the 2014-2015 school year, Ms. Martin was forced to remove S.S. from DCPS and enroll her in a new LEA.

## V.    ARGUMENT

### Count 1

68. The Plaintiffs incorporate herein by reference the allegations contained in ¶¶ 1-67.

69. The Hearing Officer erred in finding that S.S. had made meaningful educational progress by misapplying the *Rowley* standard[3] and failing to consider the extensive evidence presented showing that S.S. was not making meaningful educational progress, given her cognitive capacities.

70. Courts have interpreted the *Rowley* standard to mean that educational benefit must not be "mere trivial advancement." *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 183 (3d. Cir. 1988). Furthermore, whether or not the "benefit is de minimus must be gauged in relation to the child's potential." *Id.*

---

[3] Under the IDEA, a school district must "[provide] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188-189 (1982).

71. The Plaintiffs demonstrated by sufficient evidence that S.S. was not making meaningful educational progress for at least the past two school years, given her average cognitive capacity and the nature of her disability.

72. The Plaintiffs proved that between September 2011 and June 2014, S.S.'s DIBELS TRC Level only improved from a Level B (mid-kindergarten) to a Level G (mid-first grade). Documentary evidence, including comments in reports cards by S.S.'s classroom teachers each year, also show that S.S. had stagnated at a first grade reading level for at least the past two school years.

73. Nevertheless, the HOD relied solely on the fact that the "IEP progress reports on the annual goals show that student is progressing and has even mastered one goal." (*See* Attachment 1, HOD, at 10.)  The Hearing Officer credited these documents despite the fact that DCPS's own witness, Bernard Jankowski, S.S.'s special education teacher who wrote the progress reports, testified that the progress he reported in S.S.'s IEP progress reports was "small but limited progress."

74. Evidence presented at the due process hearing by both the Plaintiffs and DCPS further showed that S.S.'s behavioral issues are linked to her failure to progress academically.

75. At the due process hearing, the Plaintiffs' expert witness, Richard Weinfeld, testified that S.S. should have been expected to make greater educational progress, given her abilities. However, the Hearing Officer wholly failed to consider the testimony of Mr. Weinfeld, who provided opinions as to S.S.'s academic, cognitive, and behavioral profile and the progress he expected her to be able to make if given the appropriate modifications and accommodations.  The Hearing Officer made no finding that Mr. Weinfeld was not

credible, nor that DCPS had presented contradictory evidence which she credited more; instead, she failed to reference Mr. Weinfeld's testimony at all.

76. In failing to reference the extensive documentary and testimonial evidence regarding whether S.S. made educational progress and in erring in the application of the legal standard regarding "meaningful progress," the Hearing Officer made errors of fact and law. This erroneous finding was the basis for all of the other holdings in the Hearing Officer Decision.

77. As a result of the Hearing Officer's finding that S.S. did make meaningful educational progress, the Hearing Officer held that S.S.'s February 12, 2014 IEP was appropriate because "Student progressed on all of her IEP goals." (*See* Attachment 1, HOD, at 14.)

78. The Hearing Officer also erred in finding that both the November 13, 2014 IEP and the November 28, 2012 IEP met the *Rowley* standard due to the fact that "the Student progressed on all of her IEP goals as previously explained in this decision." (*See* Attachment 1, HOD, at 20.) Again, Plaintiffs put forth extensive documentary and testimonial evidence proving that S.S. failed to make meaningful educational progress, which was not referenced by the Hearing Officer at all.

79. Finally, as a result of the flawed legal analysis by the Hearing Officer that S.S. was not denied a FAPE because she made meaningful progress, the Hearing Officer erred in finding that S.S.'s placement during the 2013-2014 school year was appropriate. Furthermore, the Hearing Officer erred in finding that either the BES classroom at Malcolm X Elementary School @ Green would be appropriate or that the newly-created

Learning Disabled classroom at Amidon-Bowen Elementary School would be

appropriate.[4]

## Count 2

80. The Plaintiffs incorporate herein by reference the allegations contained in ¶¶ 1-67.

81. The Hearing Officer erred in finding that Plaintiffs did not meet their burden of proof to

show that DCPS failed to comprehensively evaluate S.S.

82. As described above, S.S. demonstrated a significant escalation in her negative behaviors

at school in the 2013-14 school year.  The IEP team determined that a FBA was a

necessary evaluation to aid the team in developing an appropriate BIP.

83. The Hearing Officer erred in finding that the FBA was "conducted... within a reasonable

period of time and without undue delay." (*See* Attachment 1, HOD, at 12.)

84. 34 C.F.R. § 300.305 states that the IEP team must review existing data as the first step of

any evaluation or reevaluation.  34 C.F.R. § 300.306 further states that the IEP team will

review the evaluations as part of the IEP evaluation and eligibility process.  In this case,

DCPS apparently completed the evaluation, but it was only provided to the parent

through her attorney as part of the litigation and it was never reviewed by the IEP team.

This means that the evaluation was never completed nor used as contemplated under the

law.

85. Further, 34 C.F.R. § 300.324(b)(ii)(B) specifically requires that the IEP team revise the

IEP as a result of any reevaluations conducted pursuant to the IDEIA.  The mere fact that

---

[4] The Hearing Officer gravely erred by permitting the introduction of evidence regarding the Learning Disabled classroom at Amidon-Bowen Elementary School.  Information about this classroom was not disclosed prior to the second day of the due process hearing, and Ms. Martin had never been provided the opportunity to tour the placement, request information about the placement, or consider its appropriateness for her daughter.  Additionally, the absurdity of finding a Behavioral and Emotional Support classroom or a Learning Disabled classroom equally appropriate for a student with severe learning disabilities entering the fifth grade while reading on a first grade level speaks to the Hearing Officer's failure to consider the particular accommodations, specialized instruction, and educational placement that S.S. requires in order to make meaningful educational progress.

DCPS apparently completed the evaluation and then told no one is the same as if DCPS
had failed to complete the evaluation, since the IEP team could not consider it and S.S.
could not benefit from its findings. Further, the parent was precluded from exercising her
rights under 34 C.F.R. § 300.502 to disagree and request an independent educational
evaluation had that been necessary.

## Count 3

86. The Plaintiffs incorporate herein by reference the allegations contained in ¶¶ 1-67.

87. The Hearing Officer erred by not ordering DCPS to permit Mr. Weinfeld to observe S.S.
at Amidon-Bowen Elementary School and at Wheatley Education Campus, S.S.'s ESY
placement during the summer of 2014.

88. The Hearing Officer failed to timely rule on Plaintiffs' prehearing motion requesting that
DCPS be ordered to permit Mr. Weinfeld to observe S.S. in an academic setting and
speak to her teachers. No ruling was ever issued on Plaintiffs' prehearing motion prior to
the HOD issued on August 25, 2014, by which time all opportunities to observe S.S. in
her prior placements had passed.

89. Notably, the Hearing Officer erred in finding that Mr. Weinfeld was not a "qualified
examiner" due to the fact that he is not a psychologist. (*See* Attachment 1, HOD, at 22.)
The fact that Mr. Weinfeld is not a psychologist is not in dispute. Both parties
acknowledge that Mr. Weinfeld's background is as a special education teacher and
administrator, and his current professional position is to advise families and school
districts on appropriate special education programming and placement. However, the
Hearing Officer draws an improper parallel between the facts of "Humble Independent

School District, 48 IDELR 1449 (SEA Tex. 2007)," [5] and the situation at hand.  In

*Humble*, [6] the school district refused to fund an IEE because the evaluator did not meet the

district's requirement to be a licensed school psychologist or educational diagnostician to

conduct evaluations on eligibility for a specific learning disability. [7]

90. This case is distinguishable in two significant ways.  First, Ms. Martin never sought

public funding for her independent evaluation.  Second, the Hearing Officer never

answered the question of what constitutes a "qualified examiner" in the District of

Columbia for this type of evaluation.  The independent evaluation that Mr. Weinfeld

sought to conduct is analogous to DCPS's "Analysis of Existing Data," which makes

recommendations regarding the student after reviewing school records and conducting an

observation of the student.  The DCPS employees who conduct an analysis of existing

data are generally special education teachers with similar backgrounds as Mr. Weinfeld. [8]

91. Under the IDEIA, an analysis of existing data is conducted as part of any initial

evaluation or reevaluation.  34 C.F.R. § 300.305(a).  Thus, the analysis of existing data

or, as Mr. Weinfeld calls it, the evaluation of educational need, is contemplated as one of

the evaluations to be conducted during the period of initial evaluations or reevaluations of

a student with a disability.

---

[5] The Hearing Officer perhaps intended to cite to *Humble Independent Sch. District*, 55 IDELR 150 (SEA Tex. 2010) because the citation she refers to does not exist. (*See* Attachment 1, HOD, at 22.)

[6] 55 IDELR 150 (SEA Tex. 2010).

[7] Furthermore, *Humble* delineates how a parent-funded IEE must be received by a school district: "Although the school district is not required to fund an IEE by Dr. [] Student's parents retain the right to secure an IEE at their own expense. They may also seek reimbursement of the IEE in a due process hearing. See, Evans, 841 F.2d at 830. Furthermore, the results of Dr. []'s IEE must be considered by the ARD in making educational decisions regarding the provision of a free, appropriate public education for Student. Dr. []'s evaluation may also be presented as evidence at a due process hearing. 34 CFR 300.502(c)(1)(2); 19 Tex. Admin. Code 89.1050(a)(5)(7)(h)." 55 IDELR 150 (SEA Tex. 2010).

[8] Of course, being a psychologist could never be the sole criteria as to who may conduct an evaluation of a student. As an obvious example, a child who required an occupational therapy evaluation or a speech language evaluation would need to be evaluated by an occupational therapist or a speech language pathologist, not a psychologist.

92. The Hearing Officer's failure to rule in a timely manner on Ms. Martin's motion requesting that Mr. Weinfeld be permitted to observe S.S. in her academic placement and her erroneous conclusion that Mr. Weinfeld is not a "qualified examiner" prevented Ms. Martin from exercising her parental rights as articulated in the IDEA and interpreted by the Supreme Court. The IDEIA intends for parents to be fully active members of the child's IEP team. *Rowley*, 458 U.S. at 205-206 ("Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process … as it did upon the measurement of the resulting IEP against a substantive standard"). Parents and guardians "must be informed about and consent to evaluations of their child under the Act," and parents and guardians "have the right to examine any records relating to their child." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (citing 20 U.S.C. § 1414(c)(3) and 20 U.S.C. § 1415(b)(1), respectively). Parental rights under the IDEIA include the right "to obtain an independent educational evaluation of the[ir] child." 20 U.S.C. § 1415(b)(1).

93. The Hearing Officer's failure to permit an observation by Mr. Weinfeld also prevented Ms. Martin from obtaining a parent-initiated independent evaluation that meets agency criteria. *See* 34 C.F.R. § 300.502(c)(1). As noted, DCPS requires an observation as part of their analysis of existing data. In addition, DCPS requires an observation as part of their independent educational evaluations generally. Meeting agency criteria is significant because when a parent initiates an independent evaluation of their child, that evaluation "must be considered by the public agency, *if [the evaluation] meets agency criteria.*" *See* 34 C.F.R. § 300.502(c)(1) (emphasis added).

94. By failing to rule in a timely manner on Plaintiffs' motion requesting an observation, the Hearing Officer directly infringed Ms. Martin's procedural rights as a parent of a student with a disability who has filed a Due Process Complaint. *See Schaffer*, 546 U.S. at 60-61. The Supreme Court relied heavily on the rationale that parents have the option of obtaining an expert opinion to inform them of their child's needs when concluding that it was reasonable for the party seeking relief to hold the burden of persuasion at a due process hearing. *Id.* By granting parents the right to an independent evaluation at public expense, the Court determined that the:

> IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access necessary evidence, or without an expert with the firepower to match the opposition.

*Id.*

95. Furthermore, because the parent is not an expert on her child's education, in order to "meaningfully participate," as is the parent's right in the process, she has the right to hire and rely on the opinion of an expert. Thus, even if the Hearing Officer was correct in holding that Mr. Weinfeld could not properly perform the evaluation, the Hearing Officer still committed reversible error by failing to order DCPS to permit Mr. Weinfeld to observe S.S. in her educational environment. The Hearing Officer also erred by limiting Ms. Martin's access to additional information about her daughter S.S.'s education. The result of the HOD opposes the goal of the IDEA, which seeks to remedy the uneven balance of information between schools and parents. *Rowley*, 458 U.S. at 205-206. Schools wholly control the flow of information about the child, and the Supreme Court has recognized this inequality in access to information about students ("[s]chool districts

have a 'natural advantage' in information and expertise," *see Schaffer*, 546 U.S. at 60),

and concluded that IDEA's procedural safeguards are intended to assist parents who

otherwise would be forced to rely on the school's impressions in order to participate in

educational decision-making, the exact scenario which is occurring here. *See id.* at 61

("These [procedural] protections ensure that a school bears no unique informational

advantage"). The ability to obtain a classroom observation is a procedural safeguard that

protects against a school's control of information about the child's education. *Id.* The

Hearing Officer stymied Ms. Martin's ability to gain additional information about S.S.'s

education. Given the outcome of the hearing, the Hearing Officer's failure to order

DCPS to permit an observation was clearly prejudicial to the Plaintiffs.

96. Although this issue is somewhat moot with respect to S.S. at this point, this issue should

still be considered by the Court because it is capable of repetition, yet will evade review

in each case because it would be moot by the time it reached this Court. *See Roe v.

Wade*, 410 U.S. 113, 125 (1973); *see also Southern Pacific Terminal Co. v. ICC*, 219

U.S. 498, 515 (1911).

## VI.    Relief Requested

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Reverse the August 25, 2014 HOD and find that S.S. was denied a FAPE because she

   failed to make meaningful educational progress during the 2012-2013 and 2013-2014

   school years;

2. Order that DCPS re-enroll S.S. in the LEA and immediately place her at Kingsbury Day

   School;

3. Order that DCPS revise S.S.'s IEP for full-time special education placement for a student with a learning disability within thirty days of her placement at Kingsbury Day School;

4. Award compensatory education according to the parameters recommended by Mr. Weinfeld in the Due Process Hearing — specifically, four hours per week of reading intervention, four hours per week of intervention to address executive functioning weaknesses, twenty-seven hours of speech and language services, and access to Kurzweil text-to-speech software;

5. Award Plaintiffs' attorneys' fees and the costs for this action; and

6. Grant any further relief that the Court deems just and proper.

Respectfully submitted,

Katherine Zeisel
D.C. Bar No. 979552
Counsel for Plaintiffs
Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 ext. 547
Fax: 202-552-6001
kzeisel@childrenslawcenter.org

Margery Thayer Hardwick
D.C. Bar No. 1022351
Counsel for Plaintiffs
Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 ext. 555
Fax: 202-552-7094
thardwick@childrenslawcenter.org

## Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)

I, Katherine Zeisel, undersigned counsel, hereby certify that I am providing legal representation without compensation for Plaintiffs S.S. and Latisha Martin in this matter, and that I am a member in good standing of the District of Columbia Bar.  Furthermore, I hereby certify that I have personal familiarity with the Local Rules for United States District Court for the District of Columbia.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on November 20, 2014.

Katherine Zeisel
D.C. Bar No. 979552
Counsel for Plaintiffs
Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 ext. 547
Fax: 202-552-6001
kzeisel@childrenslawcenter.org

## Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)

I, Margery Thayer Hardwick, undersigned counsel, hereby certify that I am providing legal representation without compensation for Plaintiffs S.S. and Latisha Martin in this matter, and that I am a member in good standing of the District of Columbia Bar.  Furthermore, I hereby certify that I have personal familiarity with the Local Rules for United States District Court for the District of Columbia.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on November 20, 2014.

Margery T. Hardwick
_____
Margery Thayer Hardwick
D.C. Bar No. 1022351
*Pro Bono* Counsel for Petitioners
Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 ext. 555
Fax: 202-552-7094
thardwick@childrenslawcenter.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2014 a copy of the foregoing Complaint was sent via hand delivery to:

DISTRICT OF COLUMBIA
A Municipal Corporation
One Judiciary Square
441 4th St., N.W., 6th Floor
Washington, D.C. 20001

Margery T. Hardwick
_____
Margery Thayer Hardwick